FILED
OCT 25 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVE SHEASLY,

    Plaintiff,

v.

                          CV 10-956-PK

                          OPINION AND ORDER

ORR FELT COMPANY,

    Defendant.

PAPAK, Magistrate Judge:

    Plaintiff Steve Sheasley filed this action against defendant The Orr Felt Company ("Orr") in the Clackamas County Circuit Court on June 23, 2010, alleging that Orr, his former employer, wrongfully terminated his employment because it perceived him as disabled and/or to prevent him from receiving welfare plan benefits, in violation of O.R.S. 659A.100 and 29 U.S.C. § 1140 (ERISA § 510). Orr removed Sheasley's action to this court on August 13, 2010.

    Now before the court is Orr's motion (#3) to dismiss for improper venue. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings on file. For the reasons set forth below, the motion is granted in part and denied in part, and this action shall be transferred to the federal district court for the Southern District of Ohio for further

Page 1 - OPINION AND ORDER

proceedings in that jurisdiction and venue.

## LEGAL STANDARD

Motions to dismiss for improper venue are governed by Federal Civil Procedure Rule 12(b)(3). In deciding a motion brought under Rule 12(b)(3), the court is not required to accept the truth of the plaintiff's allegations, *see, e.g., Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998), and may consider facts outside the parties' pleadings without thereby converting the motion into a constructive summary judgment motion, *see Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). However, the court must resolve any factual conflicts in favor of the non-moving party, and must draw all reasonable inferences in the non-moving party's favor. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

## FACTUAL BACKGROUND

Orr is an Ohio corporation headquartered in Piqua, Ohio. Sheasley is, and at all material times was, a resident of Pendleton, Oregon. On June 10, 2008, in Piqua, Sheasley and Orr entered into an Employment Agreement pursuant to which Orr agreed to employ Sheasley as its regional sales representative for its Western Sales/Service division. Under the agreement, Sheasley's sales territory covered California, Idaho, Montana, Oregon, and Washington. The agreement specified that Sheasley's employment was at-will. The agreement further specified that it was to remain effective for an indefinite term, to end upon the termination of Sheasley's employment by either party.

Article I of the agreement provided, *inter alia*, that:

[i]f [Sheasley] at any time during the term of this Agreement should be unable to
perform its [*sic*] duties under this Agreement because of personal injury, illness,
or any other cause, [Orr] may assign [Sheasley] to other duties with salary and

Page 2 - OPINION AND ORDER

benefits also adjusted to be in accordance with the new duties. If [Sheasley] is unwilling to accept the modification in duties made by [Orr], or if [Sheasley's] inability to perform is of such extent as to make a modification of duties hereunder not feasible, [Orr] may terminate this Agreement.

Article IV of the agreement provided, *inter alia*, that Orr was obligated to include Sheasley in any medical insurance plan it adopted for its employees, and that Sheasley had the right to enroll in Orr's long term disability coverage plan. It appears that Sheasley exercised this right, and was at all material times a participant in Orr's long term disability coverage plan.

Article VIII of the agreement contained a choice-of-law/forum-selection clause providing as follows:

> This Agreement and the rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of Ohio. Further, [Sheasley] and [Orr] hereby agree that **any dispute arising under this Agreement shall be determined in the Common Pleas Court of Miami County, State of Ohio or in Federal District Court for the Southern District of Ohio, Western Division, and that no action shall be filed in any other court pertaining to any dispute arising out of or connected with this Agreement**. [Sheasley] and [Orr] also hereby waive any issues of personal jurisdiction or venue for purposes of carrying out this provision.

(Emphasis supplied).

Sheasley alleges that in May and June 2010 he advised Orr that he was experiencing health problems, including "trouble walking[,] . . . stress, headaches and chest pains," and that on account of these health problems was required to remain off work from May 11, 2010, through May 25, 2010. He further alleges that on or around June 2, 2010, he inquired of Orr regarding Orr's short- and long-term disability benefits.

Orr terminated Sheasley's employment effective June 15, 2010. Sheasley alleges that Orr's decision to terminate his employment was motivated in substantial part by Orr's perception

Page 3 - OPINION AND ORDER

that he was disabled, and/or to prevent him from receiving disability benefits.

## ANALYSIS

The parties' venue dispute centers on the interpretation of the Employment Agreement's forum selection clause. Orr maintains that Sheasley's claims arise out of or are connected with the Employment Agreement, so that they may only be brought in Ohio, whereas it is Sheasley's position that his claims are entirely independent of the Employment Agreement, so that he is not bound by the forum selection clause to bring his claims in Ohio, and may instead bring them in Oregon.

### I. Choice of Law

Sheasley brings one claim under federal law and one claim under Oregon law. Sheasley's ERISA claim gives rise to federal question jurisdiction, permitting the court to exercise supplemental jurisdiction over the state-law perceived disability claim. In addition, there is complete diversity among the parties, and the amount in controversy exceeds the minimum threshold for exercise of diversity jurisdiction. Jurisdiction is therefore proper in this court based both on a combination of federal question and supplemental jurisdiction, under 28 U.S.C. §§ 1331 and 1367, and on diversity, under 28 U.S.C. § 1332.

Whether Sheasley's lawsuit is construed as a federal question action involving supplemental jurisdiction over a state-law claim or as a diversity action, this court will apply federal procedural law at all times, federal substantive law in analyzing the ERISA claim, and Oregon substantive law in analyzing the perceived-disability claim. *See Sea Hawk Seafoods v. Exxon Corp. (In re Exxon Valdez)*, 484 F.3d 1098, 1100 (9th Cir. 2007) ("Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 . . . (1938), 'federal courts sitting in diversity jurisdiction apply state

Page 4 - OPINION AND ORDER

substantive law and federal procedural law'"), *quoting Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) ("The *Erie* principles apply equally in the context of pendent jurisdiction"), *citing United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

At this stage of these proceedings, the court is called upon to interpret the Employment Agreement's forum selection clause. Article VIII of the Employment Agreement provides that the Employment Agreement is to be "governed by and construed in accordance with the laws of the State of Ohio." Orr's motion therefore raises a potentially interesting question of choice of law, namely, whether this court should apply federal, Ohio, or Oregon law in interpreting the parties' contractual forum selection clause.

There appears to be a split among the circuits as to this issue. The Third Circuit has adopted the approach of treating the interpretation of contractual forum selection clauses as a matter of state contract law. *See General Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 354 (3d Cir. 1986). In *General Engineering*, the court for the Third Circuit was called upon to interpret a forum selection and choice of law clause that specified Maryland as the forum and Maryland law as the governing law for disputes between two Virgin Islands corporations, one of which sued the other in the district court for the Virgin Islands. Noting that the federal courts are required to apply the choice of law rules of the state in which they sit, *see Klaxon Co. v. Stentor Co.*, 313 U.S. 487, 496 (1941), the *General Engineering* court applied Virgin Islands choice of law rules to determine that Maryland law governed the contract, and therefore held that the enforceability of the forum selection clause was necessarily to be determined under Maryland law, rather than federal or Virgin Islands law. *See General*

Page 5 - OPINION AND ORDER

*Engineering*, 783 F.2d 352 at 358. The court therefore analyzed the forum selection clause under Maryland law, found it enforceable, and on that basis reversed the order of the district court below denying the defendant's motion to enforce the clause, and dismissed the plaintiff's claims without prejudice. *See id.* at 361.

In *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988), the Ninth Circuit rejected the Third Circuit's contract-interpretation approach. First, the Ninth Circuit determined that the enforceability of contractual forum selection clauses was a matter of procedural law, and therefore a matter of federal procedural law for district courts sitting in diversity. *See Manetti-Farrow*, 858 F.2d at 513. Second, the court held that "because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses." *Id.* This court therefore must follow *Manetti-Farrow* and interpret the forum selection clause under federal common law, without regard to the Employment Agreement's Ohio choice-of-law provision. *See id.*; *see also Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).[1]

## II. Interpretation of the Forum Selection Clause

When interpreting a contract according to principles of the federal common law, the courts look to "general principles for interpreting contracts." *County of Santa Clara v. Astra United States*, 588 F.3d 1237, 1243 (9th Cir. 2009). Under the general principles of contract interpretation, "[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamath*

---

[1] In fact, the foregoing determination that the forum selection clause must be interpreted under federal common law is likely academic, in that the same result would almost certainly obtain if Ohio or Oregon law of contract interpretation were applied in lieu of federal law.

Page 6 - OPINION AND ORDER

*Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000), *citing Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1549 (9th Cir. 1990). That is, when applying federal contract interpretation law, the courts of the Ninth Circuit give the words of a contract their "common or normal meaning" unless circumstances show that a more specialized meaning is intended. *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987). The courts presume, further, that "every provision was intended to accomplish some purpose, and that none are . . . superfluous." *Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007), *quoting Harris v. Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004).

A written contract "must be read as a whole and every part interpreted with reference to the whole." *Shakey's Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir. 1983). Moreover, "[p]reference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Id.* "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Klamath Water Users*, 204 F.3d at 1210, *citing Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989).

The forum selection clause at issue here specifies, first, that "[Sheasley] and [Orr] . . . agree that any dispute *arising under* [the Employment Agreement] shall be determined in the Common Pleas Court of Miami County, State of Ohio or in Federal District Court for the Southern District of Ohio, Western Division" (emphasis supplied). The clause also specifies, second, that "no action shall be filed in any . . . court [other than the Common Pleas Court of Miami County, State of Ohio or in Federal District Court for the Southern District of Ohio,

Western Division] pertaining to any dispute *arising out of or connected with* [the Employment Agreement]" (emphasis supplied). The first question the court must address, therefore, is whether the two provisions of the clause should be construed as identical in meaning, as Sheasley suggests they must.

Nothing in the parallelism of the two provisions requires that the language "any dispute arising under" the Employment Agreement must be interpreted as meaning precisely the same thing as the language "any dispute arising out of or connected with" the Employment Agreement. It is logically coherent to suppose that the drafters of the provisions intended that disputes "arising under" the Employment Agreement must be determined in an Ohio court, whereas disputes "arising out of or connected with" the Employment Agreement must initially be filed in an Ohio court but may ultimately be determined elsewhere (except insofar as they may also "aris[e] under" the Employment Agreement). Moreover, any interpretation that equated the effect of the two provisions would fail to give any distinct meaning to the phrase "or connected with," thereby rendering that phrase superfluous. I therefore draw no conclusions as to the meanings of the phrases "arising under" and "arising out of or connected with" based on the parallelism of the two provisions.

Similarly, if the disjunctive "or" in the operative language of the clause's second provision ("any dispute arising out of *or* connected with [the Employment Agreement]") is to be given its common or normal meaning, or indeed any meaning at all, then "any dispute arising out of" must necessarily mean something different from "any dispute . . . connected with." More specifically, giving the words of the two phrases their common or normal meaning, the latter phrase must necessarily encompass claims with a more attenuated connection to the Employment Agreement

Page 8 - OPINION AND ORDER

than claims strictly "arising out of" the agreement. *See, e.g., Simula. Inc. v. Autoliv. Inc.*, 175 F.3d 716, 720 & n.3 (9th Cir. 1999); *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 389 (2nd Cir. 2007).

Turning to Sheasley's claims in this action, both his ERISA claim and his perceived disability claim are factually premised on the termination of his employment relationship with Orr. Although the parties' employment relationship could have arisen independently of the Employment Agreement, in fact it did not; instead, the parties' employment relationship was both created and governed by the terms of the Employment Agreement. Because Sheasley's claims are premised on the termination of a relationship created and governed by the Employment Agreement, they are necessarily "connected with" it, although they do not "aris[e] under" it. Sheasley's claims are therefore within the scope of the second provision of the forum selection clause ("no action shall be filed in any . . . court [other than the Common Pleas Court of Miami County, State of Ohio or in Federal District Court for the Southern District of Ohio, Western Division] pertaining to any dispute arising out of or connected with [the Employment Agreement]"), although not within the scope of the provision's first clause ("[Sheasley] and [Orr] . . . agree that any dispute arising under [the Employment Agreement] shall be determined in the Common Pleas Court of Miami County, State of Ohio or in Federal District Court for the Southern District of Ohio, Western Division").

## III. Enforcement of the Forum Selection Clause

Forum selection clauses are presumptively valid and enforceable, *see Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972), including in the employment contract context, *see Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868 (9th Cir. 1991). Forum selection clauses

must therefore be honored "absent some compelling and countervailing reason." *Bremen*, 407 U.S. at 12. Any party challenging the enforceability of such a clause bears a "heavy burden of proof" and must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching." *Id.* at 15. The *Bremen* court expressly recognized three sets of circumstances that could make enforcement of a forum selection clause unreasonable:

> first, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, "if enforcement would contravene a strong public policy of the forum in which suit is brought."

*Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. Cal. 1998), *citing and quoting Bremen*, 407 U.S. at 12-13, 15, 18. The courts of the Ninth Circuit consider the following factors when considering the enforceability of forum selection clauses contained in employment contracts:

> (1) any power differentials which may exist between the two parties to the contract, (2) the educational background of the party challenging the clause, (3) the business expertise of the party challenging the clause, and (4) the financial ability to bear the costs and inconvenience of litigating in the forum selected by the contract.

*Murphy*, 362 F.3d at 1140-1141 (internal quotation marks and modifications omitted), *citing and quoting Spradlin*, 926 F.2d at 868-69.

Here, Sheasley advances no compelling reason to refrain from enforcing the forum selection clause. The clause does not appear to have been included in the Employment Agreement due to fraud or over-reaching, there is no reason to believe that Sheasley will be deprived of his day in court if required to litigate in Ohio, and there is no evidence that

Page 10 - OPINION AND ORDER

enforcement would contravene any strong Oregonian public policy. In addition, there is no evidence before the court that relative power differentials among the parties or Sheasley's educational background, business expertise, or financial wherewithal create any compelling reason not to enforce the clause. Because the clause is presumptively enforceable, and because the evidentiary record does not clearly establish that the clause was invalid or that enforcement would be unreasonable or unjust, Sheasley's claims were improperly filed in this venue.

### IV. Appropriate Remedy

28 U.S.C. § 1406(a) provides that:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). As a general matter, it is in the interests of justice to transfer rather than dismiss an action filed in the wrong venue, because transfer avoids any possible statute of limitations issues, and does not require plaintiffs to incur the costs of filing and serving a new action. Courts have, however, deemed dismissal preferable to transfer where, *e.g.*, the plaintiff's case is extremely weak (and no statute of limitations issue is apparent), *see Cook v. Fox*, 537 F.2d 370, 371 (9th Cir. 1976), where the plaintiff's claims appear to have been brought in bad faith or for the purpose of harassment, *see King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992), or where the plaintiff deliberately filed in the wrong venue, *see Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983). None of those circumstances being present here, the appropriate remedy here is to transfer this action to the federal district court for the Southern District of Ohio, Western Division, where venue will be properly laid.

Page 11 - OPINION AND ORDER

## CONCLUSION

For the reasons set forth above, defendant Orr's motion (#3) to dismiss for improper venue is granted in part and denied in part. Specifically, the motion is granted to the extent Orr seeks through it to enforce the parties' contractual forum selection clause, and denied to the extent Orr requests that plaintiff Sheasley's claims be dismissed. Sheasley's claims in this action are, instead, ordered transferred to the federal district court for the Southern District of Ohio, Western Division.

Dated this 25th day of October, 2010.

_____
Honorable Paul Papak
United States Magistrate Judge